UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHRISTOPHER Q. WEST,               )
                                   )
            Petitioner,            )
                                   )
      v.                           )        No. 4:08 CV 348 DDN
                                   )
DAVE DORMIRE,                      )
                                   )
            Respondent.            )

**MEMORANDUM**

This action is before the court upon the petition of Missouri state prisoner Christopher Q. West for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 8.) For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I.   BACKGROUND**

On January 6, 2005, petitioner Christopher Q. West was convicted by a jury in the Circuit Court of St. Louis County, Missouri, of one count of attempted robbery in the first degree, one count of assault in the first degree, and one count of armed criminal action. (Doc. 9, Ex. B at 59-64.) On January 31, 2005, petitioner moved for acquittal or alternatively for a new trial. (Id. at 66-70.) On February 18, 2005, the trial court denied the motion and sentenced petitioner to a term of five years imprisonment on the attempted robbery count, twelve years imprisonment on the assault count, to be served concurrently, and three years imprisonment on the armed criminal action count, to be served concurrently with the other sentences. (Id. at 66-73.)

On November 23, 2005, petitioner appealed his conviction, arguing that the trial court erred in (1) denying his motion for a continuance; (2) denying his motion to suppress the victim's identifications; and (3) admitting hearsay testimony by one of the investigating officers, Detective Beaird. (Doc. 9, Ex. C.) On March 21, 2006, the Missouri

Court of Appeals affirmed. (Doc. 9, Ex. E); State v. West, 186 S.W.3d 488 (Mo. Ct. App. 2006) (per curiam).

On June 6, 2006, petitioner filed for post-conviction relief under Missouri Supreme Court Rule 29.15. (Doc. 9, Ex. G at 3-8.) In his original pro se motion, he argued that (1) he received constitutionally ineffective assistance of counsel, because his trial counsel failed to object to Det. Beaird's hearsay testimony; (2) he received constitutionally ineffective assistance of counsel from his appellate counsel;[1] and (3) the prosecutor knowingly presented perjured testimony from a forensic expert. (Id. at 4-5.) On August 25, 2006, the trial court appointed counsel to represent petitioner. (Id. at 9.) On November 27, 2006, with the aid of counsel, petitioner filed an amended motion for post-conviction relief. (Id. at 10-32.) In his amended motion, petitioner argued that his trial counsel rendered constitutionally ineffective assistance by (1) failing to object to the prosecutor's comment during voir dire, in which the prosecutor commented on petitioner's right to not testify; (2) failing to object to the prosecutor's personalization during his closing argument, in which the prosecutor asked the jury to put themselves in the place of the victim; (3) failing to object to the prosecutor's reference during his closing argument to matters not in evidence; and (4) failing to object to the prosecutor's instruction to the jurors during the sentencing phase, in which the prosecutor asked the jury to punish petitioner for not accepting responsibility. (Id.) On December 11, 2006, the trial court denied petitioner's request for an evidentiary hearing, and on February 28, 2007, denied the motion for post-conviction relief. (Id. at 33-39.)

On direct appeal from the denial of post-conviction relief, petitioner argued the grounds he raised in his amended motion. (Doc. 9, Ex. H.) On January 15, 2005, the Missouri Court of Appeals affirmed the denial of post-conviction relief. (Doc. 9, Ex. J.); West v. State, 244 S.W.3d 198 (Mo. Ct. App. 2008).

In its 2005 opinion, the Missouri Court of Appeals described the

---

[1]In his original motion for post-conviction relief, petitioner did not explain how his appellate counsel was constitutionally ineffective. (Doc. 9, Ex. G at 4-5.)

facts which supported the jury's verdict thus:

> [O]n August 18, 2003, Tom Nicholson ("Nicholson")and Tom Cooper ("Cooper") drove from Jefferson County to St. Louis to buy a pound of marijuana. Nicholson and Cooper, who had $800 with them, were introduced to [petitioner] and another man named Marcus Fulton ("Fulton"). [Petitioner] and Fulton were supposed to furnish the pound of marijuana in exchange for the $800. Either [petitioner] or Fulton asked to count the money before the exchange. When Nicholson revealed the money, Fulton pulled out a gun and demanded that Nicholson hand over the money. Nicholson refused to hand over the money and Fulton's gun clicked.[2] Nicholson threw the money into the car and Fulton fired his gun, missing Nicholson. At this point, [petitioner] ran around the car to the passenger side and pointed a gun at Cooper. A struggle ensued between Cooper and [petitioner], during which [petitioner] fired his gun at least four times. [Petitioner] and Fulton fled the scene. Cooper suffered multiple gunshot wounds.

(Doc. 9, Ex. J at 1-2); West, 244 S.W.3d at 199.

## II. PETITIONER'S GROUNDS FOR HABEAS CORPUS RELIEF

Petitioner claims seven grounds for relief in his original and his amended habeas petitions:

(1) The trial court erred in failing to strike for cause venireman Edward Flynn because he said he would believe police officers over other witnesses.

(2) The trial court erred in denying petitioner's motion for a continuance after the State produced palmprint evidence one week prior to trial.

(3) The trial court erred in allowing the state to present evidence that victim Cooper picked petitioner out of a lineup, because the lineup was unduly suggestive.

(4) Trial counsel was ineffective for failing to object when the prosecutor commented during voir dire on petitioner's right not to testify.

---

[2]The Missouri Court of Appeals noted that "[i]t [was] not clear from the record why the gun clicked." (Doc. 9, Ex. J at 2 n.2); West, 244 S.W.3d at 199 n.2.

(5) Trial counsel rendered ineffective assistance of counsel by not objecting to the prosecutor's closing argument asking the jury to put themselves in the place of victim Cooper and to imagine themselves being shot and then having to live with it.

(6) Trial counsel rendered ineffective assistance by failing to object to the prosecutor asking the jurors to give petitioner a harsher sentence because victim Cooper had accepted responsibility for his own criminal conduct.

(7) The trial court erred by overruling his motion to suppress the in-court identification by witness Nicholson because he had never been shown a photo line-up.

Respondent argues that petitioner's first claim is procedurally barred and the remaining contentions are meritless. The court considers the grounds seriatim.

### III. STANDARD OF REVIEW

Habeas corpus relief by a federal court is limited to determining whether the adjudication of an alleged claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The issue before this court in applying the AEDPA is not whether or not the state court or courts decided petitioner's grounds for relief correctly or incorrectly under the applicable law. Renico v. Lett, 130 S.Ct. 1855, 1862 (May 3, 2010)(per curiam). Rather, a "state court's decision is contrary to clearly established law if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case." Tokar v. Bowersox, 198 F.3d 1039, 1045 (8th Cir. 1999) (internal quotations omitted). The issue a federal habeas court faces is "whether the state court's application of clearly established federal law was objectively

-4-

unreasonable." Williams v. Taylor, 529 U.S. 362, 409-10 (2000); see also Thaler v. Haynes, 130 S. Ct. 1171, 1173-74 (Feb. 22, 2010)(per curiam). The "objectively unreasonable" standard "creates 'a substantially higher threshold' for obtaining relief than *de novo* review . . . and "demands that state-court decisions be given the benefit of the doubt." Renico, 130 S.Ct. at 1862 (internal citations omitted).

The AEDPA provides that state court factual findings are presumed correct. 28 U.S.C. § 2254(e)(1); Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003). Clear and convincing evidence that such factual findings lack evidentiary support is required to grant habeas relief. Id.

## IV. DISCUSSION

**Ground 1**

In Ground 1, petitioner argues that the trial court erred in failing to strike venireman Edward Flynn for cause. Respondent argues that the claim is procedurally defaulted because the claim was cognizable but was not raised on direct appeal from the conviction.

The doctrine of procedural bar dictates that a federal habeas court cannot review a claim that the state trial and appellate courts did not address because the petitioner failed to meet the reasonable procedural requirements of the state for presenting the claim. Lee v. Kemna, 534 U.S. 362, 375 (2002). Petitioner must present the state courts with the same claim he urges upon the federal court. Picard v. Connor, 404 U.S. 270, 276 (1971). Failure to properly raise a claim in the state courts erects a procedural bar to relief in federal court. Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997). The doctrine of procedural bar applies whether the default occurred at trial, on appeal, or during state court collateral attack. See Murray v. Carrier, 477 U.S. 478, 490-92 (1986).

At trial, petitioner's counsel moved to strike venireman Flynn for cause based on his statement that he would give more credence to a police officer's testimony. (Doc. 9, Ex. A at 157-58.) The trial court denied the motion. (Id. at 158.) Petitioner did not argue on appeal or in his motion for post-conviction relief that the trial court erred in denying the motion, or that his counsel was ineffective regarding the motion.

(See Doc. 9, Ex. C-K.)  See also Gray v. Netherland, 518 U.S. 152, 163 (1996) (making a general appeal to a constitutional guarantee does not present the substance of a claim to a state court).  As such, this argument was not fairly presented to the state courts.

A petitioner may avoid the procedural bar by demonstrating either that there is a legally sufficient cause for the default and actual prejudice resulting from it, or that failure to review the claim would result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991).  To establish cause for a procedural default, petitioner must demonstrate that some objective external factor to the defense impeded his efforts to comply with the state procedural requirements.  Id. at 750-52.  A fundamental miscarriage of justice can be demonstrated only if petitioner shows that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ." Murray, 477 U.S. at 495-96.

Petitioner provides no legally sufficient cause for the default, and has not shown that failure to review would result in a fundamental miscarriage of justice.  Therefore, Ground 1 is procedurally barred.

In addition, Ground 1 fails on its merits, because the record states that petitioner's trial counsel did unsuccessfully move to strike venireman Flynn for cause.  (Doc. 9, Ex. A at 157-58.)  Petitioner's trial counsel then used a peremptory strike on venireman Flynn, and thus Flynn did not sit on the jury.  (Id. at 165.)  Therefore, any possible prejudice created by any alleged deficient conduct by counsel or alleged erroneous ruling by the trial court was cured.  United States v. Martinez-Salazar, 528 U.S. 304, 307 (2000).

**Ground 2**

In Ground 2, petitioner argues that the trial court erred in denying his motion for a continuance after the state's alleged late disclosure of palmprint identification evidence.  Respondent argues that petitioner was not prejudiced by the denial of the motion.

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or

-6-

is compelled to defend without counsel." Ungar v. Sarafite, 376 U.S. 575, 589 (1964). See also Morris v. Slappy, 461 U.S. 1, 11 (1983). Rather, federal habeas corpus relief is only available for a trial court's decision to deny a continuance when the petitioner can show that the denial "was so egregious that it was fundamentally unfair." Whitmill v. Armontrout, 42 F.3d 1154, 1158 (8th Cir. 1994). As such, the denial of a continuance that causes counsel to be inadequately prepared does not necessarily prejudice a defendant. Wise v. Bowersox, 136 F.3d 1197, 1207 (8th Cir. 1998). Instead, the petitioner must show that his counsel's inadequate preparation resulted in a prejudicial performance. Id.; see Middleton v. Roper, 498 F.3d 812, 817 (8th Cir. 2007), cert. denied, 128 S.Ct. 2060 (2008) (holding that the defendant could receive a fair trial despite the state's six late endorsements of witnesses because the witness had, among other things, been previously identified in police reports).

Because "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process," each situation must be analyzed to reflect the relevant circumstances of the case, namely, "the reasons presented to the trial judge at the time the request is denied." Ungar, 376 U.S. at 589.

Petitioner moved for a continuance because the palmprint report prepared by the police was not given to him until about a week before trial. (Doc. 9, Ex. A at 93-98.) In light of this late disclosure, petitioner's trial counsel stated that he needed more time to research the validity and admissibility of palmprint evidence and to be able to speak to an expert. (Id. at 98.) In denying the motion, the trial court noted that the prosecution had not only endorsed Detective Krull nine months before trial, but had also specifically stated that he was being endorsed for such forensic testimony. (Id. at 98.) The trial court also reasoned, and the court of appeals agreed, that palmprint evidence is typically admissible, and thus denying the motion would not have a prejudicial effect. (Id.; Doc. 9, Ex. E at 5.) Furthermore, the trial court afforded petitioner the opportunity to interview Detective Krull before he testified. (Doc. 9, Ex. A at 99.) Given the trial court's explanations and decision to permit petitioner's trial counsel to

-7-

interview Krull before his testimony, the denial of the motion for continuance was not "a myopic insistence upon expeditiousness in the face of a justifiable request for delay." Ungar, 576 U.S. at 589.

Therefore, because the state court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law, Ground 2 is without merit.

**Grounds 3 and 7**

Petitioner alleges that the trial court violated his constitutional rights by denying his motion to suppress the pretrial photographic lineup identification because he was the only one in the line-up who had braids in his hair, and erred in permitting victim Nicholson to perform an in-court identification without having an opportunity to make a pretrial photographic lineup identification.

### Witness Cooper's Identification Testimony

"Under Missouri law, [i]dentification testimony is admissible unless the pretrial identification procedure was unnecessarily suggestive *and* the suggestive procedure made the identification unreliable." Clark v. Caspari, 274 F.3d 507, 511 (8th Cir. 2001) (citations omitted). See also State v. Middleton, 995 S.W.2d 443, 453 (Mo. 1999) (en banc).

The Missouri Court of Appeals applied this standard in petitioner's direct appeal, and found that the photographic lineup was not impermissibly suggestive:

> At least one description by a witness matched the picture in the photo lineup. In her description of [petitioner], Levy stated [petitioner] had braided hair. Further, [petitioner] was not the only man in the photo lineup with a braided hairstyle. Victim [Cooper] acknowledged that another man in the lineup had corn rows. Nothing in the difference in hairstyles or other physical characteristics of the men in the lineup made it impermissibly suggestive. The photo lineup identification in the present case was not impermissibly suggestive.

(Doc. 9, Ex. E at 6.)

Under Missouri law, officers must only make a "reasonable effort" to find "physically similar participants" to the defendant when composing

a photographic lineup. State v. Huchting, 927 S.W.2d 411, 415 (Mo. Ct. App. 1996). "A lineup is not impermissibly suggestive because the age, weight, height, hairstyle and other physical characteristics of the line-up participants are not exactly the same." Id.

As the Missouri Court of Appeals noted, witness Cooper testified that although petitioner's hair style "was the biggest thing" and "really stuck in [his] mind" when making his identification, that there was another male with a similar hair style in the photographic lineup. (Doc. 9, Ex. A at 311.) Further, victim Cooper testified that he would have chosen petitioner in the line-up even if he did not have braided hair in his photograph. (Id.) The court agrees that the identification procedures used with victim Cooper did not isolate petitioner in a manner that made the photo lineup so impermissibly suggestive as to undermine the reliability of the identification. See Schawitsch v. Burt, 491 F.3d 798, 802-03 (8th Cir. 2007) (photographic line-up based on two witness' descriptions that the robber was a very thin male whose hair ran to the middle of his neck was not unnecessarily suggestive despite half the other men in the line-up having hair that ran past their neck and all the other men having thin to medium builds); Huchting, 927 S.W.2d at 415 (line-up was not unnecessarily suggestive even though the three other men in the line-up had different heights, weights, facial hair colors, and clothing than what the victim described). Cf. Frazier v. New York, 156 Fed. App'x 423, 425 (2d Cir. 2005) (because the petitioner was "the only person in the lineup with dreadlocks" and dreadlocks were the most distinctive feature of the victim's description, the line-up was unduly suggestive).

In sum, because petitioner's characteristics were similar to others in the lineup and because victim Cooper would have identified petitioner regardless of his hairstyle in the photograph, the photographic line-up was not unduly suggestive.

However, even if the photographic identification procedure was impermissibly suggestive, victim Cooper's identification was independently reliable. "Reliability is the linchpin in determining the admissibility of identification testimony." Clark, 274 F.3d at 511. Under Missouri law, to evaluate the reliability of a witness's

identification, the court must consider: "(1) the witness's opportunity to view the suspect at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of any prior description given by the witness; (4) the level of certainty demonstrated by the witness in making the identification; and (5) the length of time between the event and the identification." Id. See also Middleton, 995 S.W.2d at 453.

The Missouri Court of Appeals held that petitioner failed to prove that the identification was unreliable:

> [V]ictim [Cooper] had a substantial amount of time to view [petitioner] at the time of the crime. Victim [Cooper] was able to view [petitioner] from the time he approached the vehicle to the time he pulled him from it and shot him. Victim's [Cooper's] degree of attention during the crime was high because the circumstances surrounding the crime gave victim [Cooper] an opportunity to observe [petitioner]. At one point in victim's [Cooper's] encounter with [petitioner] the two men were face to face. Because victim [Cooper] never gave a description of [petitioner] to police prior to the photo lineup, the accuracy of his prior police description is not considered. Victim [Cooper] demonstrated a high level of certainty at the time of the confrontation. Victim [Cooper] demonstrated certainty in his identification of [petitioner] when he immediately picked him out stating "that's the guy that shot me." The three day time period between the shooting and the identification was a short length of time. The identification of [petitioner] was not unreliable.

(Doc. 9, Ex. E at 7.)

"Whether an identification was reliable is a question of fact, and federal courts must accord the state court findings of fact a high measure of deference." Mack v. Caspari, 92 F.3d 637, 642 (8th Cir. 1996) (internal citations omitted). See also Estelle, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")

The record states that victim Cooper had a substantial amount of time to view petitioner shortly before and during the commission of the crimes. Victim Cooper first observed petitioner when he was approximately 20 feet away and approaching Nicholson's car. (Doc. 9, Ex. A at 274.) Additionally, petitioner and two other individuals walked to the front of Nicholson's car and engaged in a conversation with Nicholson. (Id. at 274-75.) Throughout this conversation, Cooper had an

unobstructed view of petitioner from the front passenger seat of Nicholson's car. (See id. at 274.) Furthermore, after Nicholson had thrown the money in the car, petitioner ran to the passenger window where Cooper was face to face with petitioner, a foot apart. (Id. at 277.) After being shot, a scuffle ensued between Cooper and petitioner outside the vehicle. (Id. at 279.) During the scuffle, Cooper indicated that petitioner was "[p]oint-blank directly in front" of him for a period of two to three minutes. (Id. at 280.) Therefore, the extended period of time that Cooper had to view petitioner tends to support the reliability of Cooper's identification.

Victim Cooper also had a high degree of attention before and during the commission of the crime. During the conversation that took place at the front of the car, Cooper was paying close attention to the events that were transpiring and was intently listening to the conversation that was taking place. (See id. at 275.) When petitioner ran to the passenger side window, Cooper's attention became fixed solely on petitioner. (See id. at 277.) Although Cooper's attention may have been focused on the gun while it was pointed at him, Cooper was face-to-face with petitioner for two to three minutes during the altercation. (Id. at 279-80.) Therefore, because Cooper was paying close attention to the events that were transpiring and because his attention was focused on petitioner during the subsequent altercation, Cooper's high degree of attention bolsters the reliability of his identification.

The accuracy of a prior description provides no guidance on whether victim Cooper's identification was reliable because the victim never gave a description of his assailant prior to the photo lineup. (See id., Ex. E at 7.)

Victim Cooper displayed a high degree of certainty in identifying petitioner. After being given the photo lineup, Cooper immediately identified petitioner as the man who shot him. (Id., Ex. A at 178, 396.) Furthermore, Cooper indicated that regardless of petitioner's hair style, he would have been able to pick petitioner from the photo spread instantly. (Id. at 311.) Cooper's high degree of certainty in identifying petitioner bolsters the reliability of his identification.

Victim Cooper's identification was also supported by the fact that

-11-

only three days had passed between the shooting and when the photo lineup was presented to him. (See id. at 292.)

In sum, given the substantial amount of time that victim Cooper had to observe petitioner, the high degree of attention Cooper paid to petitioner, victim Cooper's high degree of certainty in identifying petitioner, and that little time had transpired from the crime and the identification, the identification was reliable despite any potentially suggestive or inappropriate identification procedures.

Therefore, Ground 3 is without merit.

**Witness Nicholson's In-Court Identification**

Unlike victim Cooper, Nicholson was not shown a photographic line-up before the trial; he identified petitioner for the first time at trial:

| | |
|---|---|
| [DEFENSE COUNSEL]: | You were never asked to view a physical lineup where you could select from different people? |
| [NICHOLSON]: | No. |
| [DEFENSE COUNSEL]: | A photographic lineup, where you could pick out the person? |
| [NICHOLSON]: | No. |
| [DEFENSE COUNSEL]: | You just come in here today and point at the defendant and say, "that's the guy"? |
| [NICHOLSON]: | He's the guy. |

(Doc. 9, Ex. A at 249-50.) Petitioner argues that the trial court should not have allowed Nicholson to identify him in court without having first identified him in a photographic line-up before trial.

An identification that occurs for the first time in court is not per se impermissibly suggestive. United States v. Kime, 99 F.3d 870, 882-83 (8th Cir. 1996). Instead, "the only issue is whether [petitioner's] presence at the defense table . . . constituted impermissibly suggestive procedures." Id.

Petitioner has not shown or argued how the procedure of the in-court identification was impermissibly suggestive. Petitioner also failed to raise this argument to the state trial and appellate courts.

Therefore, Ground 7 is without merit.

**Grounds 4, 5, and 6**

Petitioner alleges that he received ineffective assistance of counsel when his trial counsel failed to object to: the prosecution's statement in voir dire that the petitioner had the right not to testify; the prosecutor's closing argument asking the jury to put themselves in the place of victim Cooper and to imagine themselves being shot and then having to live with it; and the prosecutor's comment at sentencing asking the jury to impose a harsher sentence because victim Cooper had accepted responsibility.

The right to constitutionally effective assistance of counsel is rooted in the Sixth and Fourteenth Amendments. Strickland v. Washington, 466 U.S. 668, 687 (1984). There are two components to a successful claim. First, a habeas petitioner must demonstrate that his counsel's performance was professionally deficient. Id. Second, a habeas petitioner must demonstrate that counsel's deficient performance prejudiced the defense. Id.

To establish that counsel's performance was professionally deficient, a habeas petitioner must show that his attorney's conduct fell so far below the conduct of a reasonably competent attorney that he was deprived meaningful "counsel" as guaranteed by the Sixth Amendment. Id. To establish the existence of prejudice, a habeas petitioner must show that his counsel's errors deprived him of a fair trial. Id.

"Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of professional judgment." Bucklew v. Luebbers, 436 F.3d 1010, 1016 (8th Cir. 2006). Counsel's performance is to be evaluated from "counsel's perspective at the time of the alleged error and in light of all the circumstances. . . ." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). Counsel cannot be deemed ineffective for failing to make a meritless objection. Scarberry v. Iowa, 430 F.3d 956, 959 (8th Cir. 2005); Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994) (per curiam).

**Voir Dire Comment**

The Fifth Amendment states that "no person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. To establish a Fifth Amendment violation, petitioner must show that the remarks in question were both improper and prejudicial to the his substantial rights, thereby depriving him of a fair trial. United States v. Gardner, 396 F.3d 987, 988 (8th Cir. 2005).

It is well established that the right not to testify also forbids both "comment by the prosecution on the accused's silence [and] instructions by the court that such silence is evidence of guilt." Griffin v. California, 380 U.S. 609, 615 (1965). Indirect comments may also rise to the level of a constitutional violation if they "(1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally and necessarily understand the comments as highlighting the defendant's failure to testify." Herrin v. United States, 349 F.3d 544, 546 (8th Cir. 2003). However, the "mere mention" of petitioner's right not to testify "is not per se prohibited. . . ." Pickens v. Gibson, 206 F.3d 988, 998 (10th Cir. 2000).

During voir dire and before the introduction of any evidence, "the prosecution may attempt to determine if a prospective juror will be prejudiced . . . by the absence of live testimony from the defendant." Green v. Johnson, 160 F.3d 1029, 1038 (5th Cir. 1998).

During voir dire, the prosecutor asked the prospective jurors:

> Now, along with that presumption of innocence is coming the defendant's right not to testify. It's the defendant's choice. Everybody understand that? The foundation for that, the reason for that is the burden to prove guilt or [innocence] is on the State of Missouri. The prosecution, the State, has burden to prove beyond a reasonable doubt the elements that the Court will instruct you on.

(Doc. 9, Ex. A at 71.) The Missouri Court of Appeals held that the prosecutor's comment, when read in context, was not impermissible:

> [T]he prosecutor was only commenting generally on the defendant's constitutional right not to testify as well as the constitutional right to decide whether or not to testify. These were merely "restatements of the law" and cannot be deemed to be more than a general commentary on the rights of [petitioner]. . . . While an objection to the prosecutor's comments may have been meritorious, the failure of trial counsel to object did not substantially deprive [petitioner] of a fair trial.

(Doc. 9, Ex. J at 5.) The court relied on State v. Barnum, 14 S.W.3d 587 (Mo. 2000) (en banc), in which the Missouri Supreme Court held that the prosecutor's explanation of the burden of proof during voir dire, including that the defendant did not have to testify, did not result in manifest injustice, given "the nature of the remarks and the stage of the trial at which they were made." Id. at 592.

The Missouri Court of Appeals' decision was neither contrary to, nor an unreasonable application of, federal law. The prosecution's statement reflects the accurate and current state of the law, and cannot reasonably be interpreted as asking the jurors to infer guilt if the defendant decides to not testify, given the context and brevity of the statement.

In addition, "decisions involving trial strategy are virtually unchallengeable." Loefer v. United States, 604 F.3d 1028, 1029-30 (8th Cir. 2010) (internal quotations omitted). Petitioner's counsel may have withheld an objection because he did not want to emphasize his client's decision not to testify. See Graham v. Dormire, 212 F.3d 437, 440-41 (8th Cir. 2000) (explaining the trial strategy of addressing the defendant's right not to testify); cf. Little v. Steele, No. 4:07 CV 357, 2010 WL 1254612, at *11-13 (E.D. Mo. Jan. 6, 2010)(holding that counsel was not ineffective in not requesting a "no adverse inference" instruction "because of the potential that it would underscore to the jury petitioner's failure to testify"). Given the strategic nature of withholding this objection, petitioner has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Loefer, 604 F.3d at 1029-30.

In addition, given that a similar standard was read by the judge at

the close of trial,[3] petitioner has not shown that the results of his trial would have been different had his counsel objected. Williams, 529 U.S. at 391. Nor has petitioner shown how his counsel's failure to object created a prejudicial effect of constitutional magnitude. See Lakeside v. Oregon, 435 U.S. 333, 338-41 (1978) (a judge's instruction that the jury may not draw an adverse inference from the defendant's decision not to testify is not an impermissible comment, even when given over the defendant's objection).

In sum, petitioner has not shown that his trial counsel's decision not to object would have been meritorious, was not a strategic decision, and prejudicially altered the result of his trial.

**Closing Argument Comments**

Petitioner argues that the prosecution improperly asked the jury to put themselves in the shoes of victim Cooper, and to imagine themselves being shot and having to live with it. "[I]t is improper to ask jurors to put themselves in the place of the victim." United States v. Rodriguez, 581 F.3d 775, 803 (8th Cir. 2009).

During closing arguments, the prosecution stated;

> As West -- as Cooper told you, he'll never forget that. He'll never forget it. Somebody shoots you, you don't forget that and you still saw, even though Nicholson didn't get shot, remember looking at him. It's clear, I could see it in some of your eyes, you can tell he's living with what happened there every day, and it's a year and a half later and he's still living with it.

(Doc. 9, Ex. A at 458.) The Missouri Court of Appeals held that the prosecutor did not improperly personalize his argument and did not refer to matters not in evidence. (Doc. 9, Ex. J at 6-8.)

As the Missouri Court of Appeals explained, the prosecutor's argument was that victim Cooper's testimony was credible because he was shot, not that the jury should place themselves in victim Cooper's shoes.

---

[3]Jury instruction number 9 stated, "Under the law, a defendant has the right not to testify. No presumption of guilt may be raised and no inference of any kind may be drawn from the fact that the defendant did not testify." (Doc. 9, Ex. B at 44.)

-16-

"The government may . . . explain why the jury might find the government's witnesses credible." United States v. Bentley, 561 F.3d 803, 813 (8th Cir. 2009). As such, petitioner's argument is refuted by the record.

As to the prosecutor's comment on Nicholson's credibility, to the extent petitioner argues that the prosecutor improperly bolstered his testimony or improperly referred to matters not in evidence, that argument is without merit. The prosecutor was allowed to argue that Nicholson's demeanor during his testimony supported the substance of his testimony. Id.; United States v. Beaman, 361 F.3d 1061, 1065 (8th Cir. 2004). See also Gail v. Dingle, No. 08-404 JMR/JSM, 2010 WL 681302, at *23 (D. Minn. Feb. 23, 2010); United States v. Rivas, 493 F.3d 131, 138 (3d Cir. 2007) (prosecutor did not improperly vouch for witnesses in closing argument that witnesses told the truth based on their "reluctance to speak and their demeanor" because "the jury could observe [both] for itself"); Chan v. Yates, No. CV 07 729 DSF (OP), 2010 WL 517906, at *6 (C.D. Cal. Feb. 8, 2010) (prosecutor's comments that "she could smell alcohol on [a witness], and she saw [another witness's] lip tremble while he testified" were "permissible comments about their demeanor" because "a jury can observe a witness who is drunk while testifying . . . or exhibits signs he or she is afraid or hesitant to testify").

Further, to the extent that the prosecutor's comment was inappropriate, this alone "would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." United States v. Young, 470 U.S. 1, 11-12 (1985). Rather, the court must consider "the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly." Id. at 12. "In assessing the prejudicial impact of prosecutorial misconduct, [the court must] consider: (1) the cumulative effect of the misconduct; (2) the strength of the properly admitted evidence; and (3) the curative actions taken by the district court." United States v. Wadlington, 233 F.3d 1067, 1077 (8th Cir. 2000).

The Missouri Court of Appeals held that petitioner was not prejudiced by the prosecutor's comment, and that petitioner did not show that his trial may have had a different outcome without the comment.

Because petitioner has not established the existence of prejudice as a result of the prosecutor's comment, petitioner's claim fails.

### Sentencing Comment

Petitioner argues that the prosecution improperly asked the jury to give a harsher sentence because victim Cooper accepted responsibility. At sentencing, the prosecutor stated,

> [Petitioner has] got his whole life ahead of him, but you know what, because . . . of what he did in that cold, callous manner for a portion of that life and for a long, long time he doesn't deserve to breathe the same air as people that are law abiding citizens do. He doesn't deserve it, and Cooper and Nicholson have the rest of their lives, too, but they've got consequences. And you know that Cooper and Nicholson came in here and accepted responsibility for what they did, and so when you consider the appropriate punishment. I would ask that you hold him accountable. I ask that you hold him accountable for the Attempted Robbery, for those three gunshots he pumped into Cooper.

(Doc. 9, Ex. A at 489-90.)

"[W]hether a defendant exercises his constitutional right to trial by jury to determine his guilt or innocence must have no bearing on the sentence." State v. Vaughn, 940 S.W.2d 26, 29 (Mo. Ct. App. 1997); United States v. Marzette, 495 F.2d 207, 207 (8th Cir. 1973) (per curiam).

The Missouri Court of Appeals rejected petitioner's argument,

> The prosecutor's comments were in reference to evidence that [had] been admitted in the guilt phase of the trial. It only reminded the jury that Nicholson and Cooper, by their own admission, were also guilty of wrongdoing and had accepted responsibility for their acts. The prosecutor asked the jury to impose a sentence that was commensurate with the crimes for which [petitioner] was found guilty. . . . We fail to see how these statements impermissibly commented on [petitioner's] right to have a trial or asked the jurors to impose a harsher sentence on [petitioner] because he exercised that right. An objection would have been without merit and trial counsel was not ineffective for failing to object.

(Doc. 9, Ex. J at 8-9.)

To the extent petitioner argues that the prosecutor sought a harsher sentence based on petitioner exercising his right to a jury trial, this

-18-

argument is not supported by the record.  As the Missouri Court of Appeals held, the record states that the prosecutor was arguing for an appropriate sentence based on petitioner's crimes, and did not want the jury to give a lesser sentence based on the victims' criminal conduct. Petitioner has not shown that his counsel was constitutionally ineffective for failing to object to the prosecutor's comments during closing arguments.  See Gill v. State, 300 S.W.3d 225, 230 (Mo. 2009) (en banc) (noting the trial court's "broad discretion during the penalty phase to admit any evidence it deems helpful to the jury in assessing punishment" and that "[v]ictim impact evidence is admissible under the United States and Missouri Constitutions").

Therefore, petitioner's argument is without merit.

## VI.  CONCLUSION

For the reasons stated above, the petition of Christopher Q. West for a writ of habeas corpus is denied.  An appropriate Judgment Order is issued herewith.


\_\_\_/S/\_\_\_David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**


Signed on February 14, 2011.